## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSASCOLA DIVISION

| | | |
|---|---|---|
| CLARISA LOZANO, | § | Civil Cause No. 3:19-CV-01451 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| 3M COMPANY; | § | |
| AEARO TECHNOLOGIES LLC, | § | The Hon. M. Casey Rodgers |
| | § | MDL No. 2885 |
| Defendants. | § | |

## <u>COMPLAINT</u>

Plaintiff, CLARISA LOZANO, by and through the undersigned counsel, brings

this Complaint seeking judgment against Defendant 3M Company and Aearo

Technologies LLC; (collectively hereinafter referred to as "Defendant," "3M," or

"3M/Aearo") for personal injuries incurred while in training and/or on active

military duty, resulting from Defendant's defective and unreasonably dangerous

product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-

ended Combat Arms earplugs"). At all relevant times, the Dual-ended Combat

Arms earplugs were manufactured, designed, formulated, tested, packaged,

labeled, produced, created, made, constructed, assembled, marketed, advertised,

promoted, distributed, and sold by Defendant.

1

## INTRODUCTION

1.     Plaintiff, a United States Navy Veteran, brings this suit to recover damages arising from personal injuries sustained while in training and/or on active military duty domestically and abroad. Plaintiff used Defendant's dangerously defective Dual-ended Combat Arms earplugs during helicopter flight operations, flight line operations, training firing, other live fire training. Defendant sold the Dual-ended Combat Arms earplugs to the U.S. military for more than a decade without the military and/or Plaintiff having any Knowledge of the defect(s) and failed to adequately warn the military and/or Plaintiff of the defect(s).

2.     Defendant's Dual-ended Combat Arms earplugs were standard issue in certain branches of the military (including Plaintiff's) between at least 2003 to at least 2015. Thus, Defendant's Dual-ended Combat Arms earplugs have likely caused thousands, if not millions, of soldiers to suffer significant hearing loss, tinnitus, and additional injuries related to hearing loss, including but not limited to, pain and suffering and loss of the pleasures of life.

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff, a United States Navy Veteran, is a citizen and resident of Texas.

4.    Defendant 3M Company is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota. Among other things, Defendant is in the business of designing, manufacturing, and selling worker safety products, including hearing protectors and respirators. Defendant has a dominant market share in virtually every safety product market, including hearing protection. Defendant is one of the largest companies in the country.

5.    Defendant Aearo Technologies, LLC ("Aearo") is a limited liability company formed in Delaware with its principle place of business in Indiana located at 7911 Zionsville Rd, Indianapolis, IN 48268.

6.    In November 2007, 3M Company announced that it was acquiring Aearo Technologies for $1.2 billion. 3M's acquisition of Aearo was completed in or about April of 2008. As a result of this acquisition, 3M is Aearo's successor-in interest and Aearo is 3M's predecessor-in-interest. 3M is liable for its own conduct and Aearo's, as described below.

7.    This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states.

8.  Personal jurisdiction over Defendant is proper because they have done business in the state of Florida, have committed a tort in whole or in part in the state of Florida, have substantial and continuing contact with the state of Florida, and derive substantial revenue from goods used and consumed within the state of Florida. In addition, there are over 21 military bases in Florida, which include serviceman from all four branches of the military and the Florida Army National Guard, Army Reserve, Air Force National Guard, Air Force Reserve, Marine Corps Reserve, and Navy Reserve, to which Defendant has provided its products.

9.  Plaintiff's claims arise out of Defendant's purposeful contacts with Florida. This action is being direct filed in MDL No. 2885 in the Northern District of Florida. The designated forum for the Plaintiff in this action is the Southern District of Texas.

10. Plaintiff was a citizen of Texas at all relevant times. Plaintiff's home record at time of discharge from the military was Texas. Plaintiff was stationed in Virginia during the events giving rise to this action.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

12.   Based upon information and belief, and in part upon the pleadings and allegations as contained in United States ex rel. Moldex-Metric, Inc. v. 3M Company, Case No. 3:16-cv- 01533-DCC (D.S.C. 2016), Plaintiff states as follows:

13.   On July 26, 2018, Defendant agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-ended Combat Arms Earplugs to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device. See "United States Department of Justice, 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs" (Jul. 26, 2018), available at:

https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual  (last visited May 2, 2019).

14.   Defendant's Dual-ended Combat Arms earplugs are non-linear, or selective attenuation, earplugs that were designed to provide soldiers with two different options for hearing attenuation depending upon how the plugs are worn. Both sides of the dual-sided earplugs were purported to provide adequate protection for soldiers' ears when worn.



Figure 1. **3M Dual—ended Combat Arms™ Earplugs, Version 2 (CAEv2).**

15. If worn in the "closed" or "blocked" position (olive side in user's ear), the earplugs are intended to act as a traditional earplug and block as much sound as possible.

16. If worn in the "open" or "unblocked" position (yellow side in user's ear), the earplugs are intended to reduce loud impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises; for example, commands spoken by fellow soldiers and approaching enemy combatants.

17. Defendant's standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal.

18. The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning.

19.   When inserted according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape, thereby loosening the seal in their ear canals and providing inadequate protection.

20.   Because the earplugs are symmetrical, following the standard fitting instructions will result in a loosening of the seal regardless of which side is inserted into the ear canal.

21.   These earplugs were originally created by Aearo Technologies ("Aearo" or "3M/Aearo").

22.   Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, (accordingly 3M is liable for Aearo's conduct as alleged herein).

23.   Earplugs like the Dual-ended Combat Arms earplugs are sold with a stated Noise Reduction Rating ("NRR")[1] that should accurately reflect the effectiveness of the hearing protection provided.

24.   The United States military likely purchased, at a minimum, one pair of 3M's Combat Arms earplugs for each deployed soldier annually involved in certain foreign engagements between at least 2003 and at least 2015. *See*

_____

[1] Noise Reduction Rating ("NRR") is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment. Hearing protectors are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound. They must be tested and approved by the American National Standards ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines. The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

McIlwain, D. Scott et al., *Heritage of Army Audiology and the Road Ahead: The Army Hearing Program*, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008).

25.  3M's/Aearo's Dual-ended Combat Arms earplugs were sold to the United States military beginning in at least late 2003 and continued to be sold directly and indirectly by 3M to the United States military until at least late 2015, when Defendant discontinued the earplugs.

26.  The defective earplugs have not been recalled and therefore are likely in continued use by service members.

## History of Testing: January 2000

27.  Employees of 3M/Aearo began testing the Dual-ended Combat Arms earplugs in approximately January 2000.

28.  3M/Aearo chose to conduct the testing at its own laboratory rather than an outside, independent laboratory.

29.  3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the Dual-ended Combat Arms earplugs.

30.  3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow)

end of the Dual-ended Combat Arms earplug inserted; and (3) the subject's hearing with the closed/blocked (olive) end of the Dual-ended Combat Arms earplug inserted. This testing was designed to provide data regarding the NRR of the Dual-ended Combat Arms earplugs.

31.   3M/Aero personnel monitored the results of each subject as the test was performed and could thus stop the test if the desired NRR results were not achieved.

32.   Eight of the ten subjects were tested using both the open and closed end of the Dual-ended Combat Arms earplugs.

33.   Testing of the eight subjects produced an average NRR of 10.9, which was far below the adequate NRR that 3M/Aero personnel would and should have expected for the closed end.

34.   3M/Aero prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms earplugs.

35.   3M/Aero personnel determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their

original shape and cause the earplug to loosen, often imperceptibly to the wearer.

36.   The symmetrical nature of the earplug prevents a snug fit when worn either "open" or "closed" according to the standard fitting instructions.

37.   3M/Aero personnel determined that a snug fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

38.   3M/Aearo personnel decided not to test the closed end of the Dual-ended Combat Arms earplugs for two of the ten subjects because the results were well below the intended and desired NRR.

39.   3M/Aero completed testing of all ten subjects with the open end of the Dual-ended Combat Arms earplugs to obtain a facially invalid "-2" NRR, which would indicate that the closed end of the earplug actually amplified sound.

40.   3M/Aero represented the "-2" NRR as a "0" NRR, which 3M/Aero has displayed on its packaging since its launch.

41.   3M/Aero falsely touts the "0" NRR as a benefit of the Dual-ended Combat Arms earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection. However, the true value of "-2" NRR actually amplifies sound, thereby exposing the wearer to harm.

## History of Testing: February 2000

42.  Upon identifying the fit issue, 3M/Aero re-tested the olive, closed end of the Dual-ended Combat Arms earplug in February 2000 using different fitting instructions.

43.  When testing the closed end, 3M/Aero personnel folded back the yellow flanges on the open end of the Dual-ended Combat Arms earplugs prior to insertion.

44.  Using this "modified" fitting procedure, 3M/Aero achieved a "22" NRR on the closed end of the Dual- ended Combat Arms earplug.

45.  3M, however, never properly warned serviceman that the only potential way to achieve this purported NRR was to modify the Dual-ended Combat Arms earplug by folding the yellow flanges on the opposite end.

46.  The yellow, open end of the Dual-ended Combat Arms earplug was not re-tested using the "modified" fitting procedure.


## Defendant's Representations and Omissions

47.  Since 2003, 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the U.S. military in response to Requests for Production ("RFP").

48.   From 2003-2012, 3M/Aearo was the exclusive supplier of this type of earplugs to the U.S. military.

49.   3M/Aearo was aware of the design defects alleged herein in as early as 2000.

50.   Accordingly, the defects of the Dual-ended Combat Arms earplugs were known to Defendant many years before 3M/Aearo became the exclusive provider of the earplugs to the U.S. military.

51.   3M/Aearo knew at the time it bid for the initial IQC that the Dual-ended Combat Arms earplugs had dangerous design defects, as they would not adequately protect the users from loud sounds. Defendant did not adequately warn of the defects and did not adequately warn or instruct users on how to wear the earplugs.

52.   3M/Aero responded to the United States military's Requests for Proposal ("RFP") with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

53.   3M/Aearo knew at the time it made its certifications that the earplugs did not comply with the MPID.

54.   3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to not only the wearer but also trained

audiologists visually observing a wearer, thereby permitting damaging

sounds to enter the ear canal by traveling around the outside of the earplug,

while the user and/or audiologist incorrectly believes that the earplug is

working as intended.

55.    The pertinent Salient Characteristics set forth in the MPID, which was

uniform across all RFPs, in relevant part, are as follows:

> 2.1.1. Ear plugs shall be designed to provide protection from
> the impulse noises created by military firearms, while allowing
> the wearer to clearly hear normal speech and other quieter
> sounds, such as voice commands, on the battlefield.
>
> 2.2.2. The sound attenuation of both ends of the ear plugs shall
> be tested in accordance with ANSI S3.19.
>
> 2.4 <u>Workmanship</u>. The ear plugs shall be free from all defects
> that detract from their appearance or impair their serviceability.
>
> 2.5 <u>Instructions</u>. The illustrated instructions explaining the
> proper use and handling of the ear plugs shall be supplied with
> each unit.
>
> Solicitation No. SP0200-06-R-4202 at 41-42.

56.    The Environmental Protection Agency ("EPA") also has promulgated

regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, *et seq*., that

govern the testing and attendant labeling of hearing protective devices like

the Dual-ended Combat Arms earplugs. Specifically, 40 C.F.R. § 211.206-1

provides that:

> The value of sound attenuation to be used in the calculation of
> the Noise Reduction Rating must be determined according to
> the "Method for the Measurement of Real-Ear Protection of
> Hearing Protectors and Physical Attenuation of Earmuffs." This
> standard is approved as the American National Standards
> Institute Standard (ANSI-STD) S3.19- 1974.

57.    Additionally, 40 C.F.R. § 211.204-4(e) of the EPA regulations requires that

certain "supporting information" must accompany hearing protection devices

sold in the United States:

> The following minimum supporting information must
> accompany the device in a manner that insures its availability to
> the prospective user. In the case of bulk packaging and
> dispensing, such supporting information must be affixed to the
> bulk container or dispenser in the same manner as the label, and
> in a readily visible location…**Instructions as to the proper
> insertion or placement of the device.** (emphasis added).

58.    3M/Aearo also knowingly used the deliberately-flawed retest of the closed

end of the earplugs to sell Dual-ended Combat Arms earplugs to the United

States military with the representation that they possessed a "22" NRR in the

closed position.

59.    Defendant includes standard instructions for "proper use" of the earplugs in

the packaging for the earplugs as required by the EPA, Noise Control Act,

and the MPID.

60.    Defendant's standard instructions for "proper use" of its Dual-ended Combat

Arms earplugs do not instruct wearers to use the "modified" insertion

method used in testing, which would require the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

61. Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not warn wearers that subjects in testing did not follow these standard instructions, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

62. Instead, Defendant improperly instructs wearers to simply insert the earplugs into the ear canal.

63. By failing to instruct wearers of the Dual-ended Combat Arms earplug to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

64. 3M's/Aearo's packaging and marketing of such earplugs' standard insertion instructions and with a labeled NRR of "22" thereby misleads the wearer and has likely caused hundreds of thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M's/Aearo's defective earplugs.

65. Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M's/Aearo's instructions for use of the earplugs do not instruct, and never have instructed, the wearer to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem).

66. 3M's/Aearo's instructions instead provided standard fitting instructions for inserting the earplug on both ends, which are facially inadequate.

67. 3M/Aearo was aware prior to selling the earplugs to the United States military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs it wanted on both ends of the Dual-ended Combat Arms earplug, and 3M/Aearo continued to use these inaccurate NRRs to market the earplugs to the United States military for more than ten years without disclosing the design defect in the earplugs.

68. Plaintiff reserves the right to supplement these facts after discovery.

### Plaintiff Clarisa Lozano

69. Plaintiff joined the United States Navy in 2005 and was discharged in 2010.

70. Prior to joining the military, Plaintiff had no signs or symptoms of hearing loss or tinnitus.

71.   During her United States military service, Plaintiff was stationed at Norfolk Naval Station a United States military base in Virginia.

72.   Plaintiff was deployed to active duty on the USS Eisenhower in the Persian Gulf multiple times between 2006 and 2010.

73.   At the time of Plaintiff's deployment and during her pre-deployment training, the 3M Dual-ended Combat Arms earplugs were standard issue.

74.   The Dual-ended Combat Arms earplugs were provided to Plaintiff.

75.   The Dual-ended Combat Arms earplugs were provided for single use while Plaintiff was deployed and during her pre-deployment training.

76.   Plaintiff wore the Dual-ended Combat Arms earplugs while in training and in the field.

77.   Plaintiff wore the earplugs at military bases in the United States and while on the flight deck of the USS Eisenhower.

78.   Plaintiff was never instructed to fold back the flanges on the opposite side of use of the earplug.

79.   Plaintiff was first diagnosed with hearing issues in approximately 2012 in Texas.

**CAUSES OF ACTION**
**COUNT I**
**DESIGN DEFECT – NEGLIGENCE**

80.   At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms with reasonable and due care for the safety and well-being of U.S. military service men and women, including the Plaintiff, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

81.   Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs, and Defendant knew that the Dual-ended Combat Arms earplugs would be used by U.S. military service men and women, including the Plaintiff.

82.   The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

83.   When the Dual-ended Combat Arms is inserted into the ear according to standard fitting instructions provided by Defendants, a proper seal is not formed with the ear canal.

84.   The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug

may not maintain a tight seal in some wearers' ear canals such that

dangerous sounds can bypass the plug altogether thereby posing serious risk

to the wearer's hearing, unbeknownst to him or her.

85.   Upon information and belief, Defendant failed to exercise reasonable and

due care under the circumstances and therefore breached this duty in the

following ways:

a.   Defendant failed to design the Dual-ended Combat Arms earplugs in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant.

b.   Defendant failed to design the Dual-ended combat Arms earplugs in a manner which would safely prevent against the injuries claimed by Plaintiff;

c.   Defendant failed to properly and thoroughly test the Dual-ended Combat Arms earplugs;

d.   Defendant failed to properly and thoroughly analyze the data resulting from testing of the Dual-ended Combat Arms earplugs;

e.   Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

f.   Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without providing adequate or proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner the Defendant's standard fitting instructions directed;

g.   Defendant failed to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection

products, specifically including products such as the Dual-ended Combat Arms earplugs; and

h.   Defendant negligently continued to manufacture and distribute the Dual- ended Combat Arms earplugs to the U.S. military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

86.   Defendant knew or should have known that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the U.S. military service men and women who used the earplugs.

87.   The Dual-ended Combat Arms earplugs were dangerous when used by ordinary U.S. military service men and women who used it with the knowledge common to the U.S. military as to the product's characteristics and common usage.

88.   The Dual-ended Combat Arms earplugs were dangerous when used by ordinary U.S. military service men and women who followed the instructions provided by Defendants.

89.   Defendant knew or should have known of the defective design at the time the Dual-ended Combat Arms earplugs were used by Plaintiff.

90.   At the time the Dual-ended Combat Arms earplugs left the possession of Defendant, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary U.S. military service member.

91.   At the time the Dual-ended Combat Arms earplugs were used by the Plaintiff, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary U.S. military service member.

92.   At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

93.   As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers, of the Dual-ended Combat Arms earplugs, Defendant had superior knowledge of the Dual-ended Combat Arms earplugs and owed a duty of care to Plaintiff.

94.   It was foreseeable that Defendant's actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to the Plaintiff.

95.   The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's personal injuries – specifically Plaintiff's sensorineural hearing loss and tinnitus. Defendant's conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because 3M designed, manufactured, tested, sold, and distributed the Dual-ended Combat Arms earplugs to the U.S. military.

96.   As a direct and proximate result of Defendant's negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
## DESIGN DEFECT – STRICT LIABILITY

97.   Defendant is engaged in the business of designing, manufacturing, and selling the Dual-ended Combat Arms earplugs.

98.   Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

99.   The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

100.  Defendant knew that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the U.S. military service members who used the device.

101.  The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used the earplugs as they were intended to be used.

102.  The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device because the design of the Dual-ended Combat Arms earplugs allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to a U.S military service member's hearing unbeknownst to him or her.

103.  Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiff.

104.  At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary U.S. military service member who used them.

105.  At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were defective and were in a

condition which made them unreasonably dangerous to the ordinary U.S. military service member who used them.

106.   At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

107.   The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the short -stem design of the earplugs allowed for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

108.   Defendant's conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

109.   As a direct and proximate result of Defendant's design defect, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest,

costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT III
## FAILURE TO WARN – NEGLIGENCE

110.  At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

111.  Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

112.  The Dual-ended Combat Arms earplugs are defective, in part, in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

113.  The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, as to

the risk that the Dual-ended Combat Arms earplugs would allow for

dangerous sounds to bypass the plug altogether thereby posing a serious risk

to Plaintiff's hearing unbeknownst to him or her.

114.   The Dual-ended Combat Arms earplugs contained no warnings or

instructions, or in the alternative, inadequate warnings or instructions, that

subjects in testing did not follow Defendant's standard instructions for

insertion, but rather the "modified" insertion method requiring the wearer to

fold back the flanges of the opposite end before inserting the plug into the

ear.

115.   The Dual-ended Combat Arms earplugs contained no warnings or

instructions, or in the alternative, inadequate warnings or instructions, that

following Defendants standard instructions for insertion would not achieve

the "22" NRR and would thereby pose a serious risk to Plaintiff's hearing

unbeknownst to him or her.

116.   The warnings and instructions that accompanied the Dual-ended Combat

Arms earplugs failed to provide the level of information that an ordinary

consumer would expect when using the Dual-ended Combat Arms earplugs

in a manner reasonably foreseeable to Defendant.

117.   Had Plaintiff received proper or adequate warnings or instructions as to the

risks associated with the Dual-ended Combat Arms earplugs, including but

not limited to instructing wearers to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

118.  The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because design of the earplugs allows for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

119.  As a direct and proximate result of Defendant's failure to warn, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV
## FAILURE TO WARN – STRICT LIABILITY

120.   Defendant is engaged in the business of designing, manufacturing, and
selling the Dual-ended Combat Arms earplugs.

121.   Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

122.   The Dual-ended Combat Arms earplugs are defective in that the design of
the earplug causes them to loosen in the wearer's ear, imperceptibly to the
wearer, thereby permitting damaging sounds to enter the ear canal by
traveling around the outside of the earplug while the user incorrectly
believes that the earplug is working as intended.

123.   The Dual-ended Combat Arms earplugs are defective and unreasonably
dangerous even if Defendants exercised all proper care in the preparation
and sale of the product.

124.   Defendant knew that the defective condition of the Dual-ended Combat
Arms earplugs made it unreasonably dangerous to the U.S. military service
members who used the device.

125.   The Dual-ended Combat Arms earplugs were dangerous when used by an
ordinary user who used it as it was intended to be used.

126.   The Dual-ended Combat Arms earplugs were dangerous to an extent beyond
which would be contemplated by the ordinary user who purchased and/or
used the device because the design of the Dual-ended Combat Arms
earplugs allow for dangerous sounds to bypass the plug altogether, thereby

posing a serious risk to a U.S military service members' hearing unbeknownst to him or her.

127. Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiff.

128. At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary U.S. military service member who used them.

129. At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary U.S. military service member who used them.

130. At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

131. The Dual-ended Combat Arms earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Dual-ended Combat Arms earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

132.   The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendant's standard instructions for insertion, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

133.   The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendants standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to him or her.

134.   The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendant.

135.   Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including but not limited to instructing wearers to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of

the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

136.   The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the short-stem design of the earplugs allowed for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

137.   Defendant's conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

138.   As a direct and proximate result of Defendant's design defect, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT V
## BREACH OF EXPRESS WARRANTY

139.   Through Defendant's public statements, descriptions of the Dual-ended

Combat Arms earplugs, and promises relating to the Dual-ended Combat

Arms earplugs, Defendant expressly warranted, among other things, that the

Dual-ended Combat Arms earplugs were safe and effective for their

intended use, and were designed and constructed to prevent harmful sounds

from bypassing the earplugs to protect the user's hearing.

140.   These warranties came in one or more of the following forms:

(i)     publicly made written and verbal assurances of safety;

(ii)    press releases and dissemination via the media, or uniform
        promotional information that was intended to create a demand
        for the Dual-ended Combat Arms earplugs (but which
        contained material misrepresentations and utterly failed to warn
        of the risks of the Dual-ended Combat Arms earplugs);

(iii)   verbal assurances made by Defendant's consumer relations
        personnel about the safety of the Dual-ended Combat Arms
        earplugs which also downplayed the risks associated with the
        Dual-ended Combat Arms earplugs; and

(iv)    false and misleading written information and packaging
        supplied by Defendant.

141.   When Defendant made these express warranties, it knew the purpose(s) for

which the Dual-ended Combat Arms earplugs were to be used and warranted

it to be in all respects safe and proper for such purpose(s).

142.  Defendant drafted the documents and/or made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

143.  The Dual-ended Combat Arms earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

144.  Plaintiff further alleges that all of the aforementioned written materials are known to Defendant and in its possession, and it is Plaintiff s reasonable belief that these materials shall be produced by Defendant and made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

145.  As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VI
## BREACH OF IMPLIED WARRANTIES

146.  At all times material, Defendant was a merchant with respect to the Dual-
ended Combat Arms earplugs.

147.  As a service member, Plaintiff was a foreseeable user of the Dual-ended
Combat Arms earplugs.

148.  At the time Defendant marketed, sold, and distributed the Dual-ended
Combat Arms earplugs, Defendant knew of the use for which the Dual-
ended Combat Arms earplugs were intended, impliedly warranted the Dual-
ended Combat Arms earplugs to be fit for a particular purpose, and
warranted that the Dual-ended Combat Arms earplugs were of merchantable
quality and effective for such use.

149.  Defendant knew, or had reason to know, that Plaintiff would rely on
Defendant's judgment and skill in providing the Dual-ended Combat Arms
earplugs for its intended use.

150.  Plaintiff reasonably relied upon the skill and judgment of Defendant as to
whether the Dual-ended Combat Arms earplugs were of merchantable
quality, safe, and effective for its intended use.

151. Contrary to such implied warranties, the Dual-ended Combat Arms earplugs were neither of merchantable quality, nor safe or effective for its intended use, because the Dual-ended Combat Arms earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-ended Combat Arms earplugs were used.

152. The Dual-ended Combat Arms earplugs were defectively designed and manufactured; and were distributed and sold without the provision of reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-ended Combat Arms earplugs to service members, including Plaintiff.

153. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## <u>COUNT VII</u>
## <u>FRAUDULENT MISREPRESENTATION</u>

154.   Defendant falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms earplugs had been properly tested and were free from all defects.

155.   Defendant intentionally manipulated testing of the Dual-ended Combat Arms earplugs, resulting in false and misleading NRRs and improper fitting instructions.

156.   The representations made by Defendant were, in fact, false.

157.   When said representations were made by Defendant, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

158.   These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff and the public in general, and were made with the intent of inducing Plaintiff and the public in general, to recommend, purchase, and/or use the Dual-ended Combat Arms earplugs, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

159.  At the time the aforesaid representations were made by Defendant, and at the time Plaintiff used the Dual-ended Combat Arms earplugs, Plaintiff unaware of the falsity of said representations and reasonably believed them to be true.

160.  In reliance upon said representations, Plaintiff was induced to and did use Dual- ended Combat Arms earplugs, thereby sustaining severe and permanent personal injuries.

161.  Defendant knew and was aware, or should have been aware, that the Dual-ended Combat Arms earplugs had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings and instructions.

162.  Defendant knew or should have known that the Dual-ended Combat Arms earplugs had a potential to, could, and would cause severe and grievous injury to the users of said product.

163.  Defendant brought the Dual-ended Combat Arms earplugs to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

164.  As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIII
## FRAUDULENT CONCEALMENT

165.   At all times relevant, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms earplugs for their intended use.

166.   Defendants knew or were reckless in not knowing that their representations were false.

167.   In representations to Plaintiff, Defendant fraudulently concealed and intentionally omitted the following material information:

    a.    that testing of the Dual-ended Combat Arms earplug was deliberately flawed;

    b.    the amount of hearing protection provided by the Combat Arms earplug;

    c.    that Defendant was aware of the defects in the Dual-ended Combat Arms earplug;

    d.    that the Dual-ended Combat Arms earplug was defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;

     e.    that the Dual-ended Combat Arms earplug was manufactured negligently;

     f.    that the Dual-ended Combat Arms earplug was manufactured defectively;

     g.    that the Dual-ended Combat Arms earplug was designed defectively;

     h.    that the Dual-ended Combat Arms earplug was designed negligently; and,

     i.    that the Dual-ended Combat Arms earplug was designed improperly.

168.   Defendant was under a duty to disclose to Plaintiff the defective nature of the dual-ended Combat Arms earplugs.

169.   Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the dual-ended Combat Arms earplugs, including Plaintiff, in particular.

170.   Defendant's concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-ended Combat Arms earplugs was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the dual-ended Combat Arms earplug, and actions thereon, and to cause him or her to purchase and/or use the product. Defendant knew that Plaintiff had no way to determine the truth

behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the Dual-ended Combat Arms earplugs, as set forth herein.

171. Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

172. By reason of the foregoing, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.


**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

<u>**COUNT IX**</u>
<u>**NEGLIGENT MISREPRESENTATION**</u>


173. Defendant had a duty to represent to Plaintiff and the public in general that the Dual-ended Combat Arms earplugs had been properly tested and found to be effective.

174.  Defendant was aware its testing procedures and fitting instructions were unlawfully manipulated.

175.  The representations made by Defendant were, in fact, false.

176.  Defendant failed to exercise ordinary care in the representation of the Dual-ended Combat Arms earplugs, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant negligently misrepresented the Dual-ended Combat Arms earplugs' safety and efficacy.

177.  Defendant breached its duty in representing the Dual-ended Combat Arms earplugs' serious defects to Plaintiff.

178.  As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.


**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT X
## FRAUD AND DECEIT

179.  Defendant conducted unlawful and improper testing on the Dual-ended
      Combat Arms earplugs.

180.  As a result of Defendant's unlawful and improper testing, Defendant
      blatantly and intentionally distributed false information which overstated the
      amount of hearing protection provided by the Dual-ended Combat Arms
      earplugs.

181.  As a result of Defendant's unlawful and improper testing, Defendant
      intentionally omitted and misrepresented certain test results to Plaintiff.

182.  Defendant had a duty when disseminating information to the public to
      disseminate truthful information and a parallel duty not to deceive the public
      and Plaintiff.

183.  The information distributed to Plaintiff by Defendant contained material
      representations of fact and/or omissions concerning the hearing protection
      provided by the Dual-ended Combat Arms earplugs.

184.  These representations were all false and misleading.

185.  Upon information and belief, Defendant intentionally suppressed and/or
      manipulated test results to falsely overstate the amount of hearing protection
      provided by the Dual-ended Combat Arms earplugs.

186. It was the purpose of Defendant in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms earplug and induce the public and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the Dual-ended Combat Arms earplugs.

187. Defendant made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-ended Combat Arms earplugs were fit and safe for use.

188. These representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

189. These representations and others made by Defendant were made with the intention of deceiving and defrauding Plaintiff, were made to induce Plaintiff to rely upon misrepresentations, and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms earplugs.

190. Defendant recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms

earplugs to the public at large, and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

191.   Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplug.

192.   Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiff into a sense of security so that Plaintiff would rely on the representations made by Defendant and purchase, use, and rely on the Dual-ended Combat Arms earplugs.

193.   Plaintiff did in fact rely on and believe the Defendant's representations to be true at the time they were made and relied upon the representations and was thereby induced to use and rely on the Dual-ended Combat Arms earplugs.

194.   At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs.

195.   Plaintiff did not discover the true facts with respect to the dangerous and
serious health and/or safety concerns, and the false representations of
Defendants, nor could Plaintiff with reasonable diligence have discovered
the true facts.

196.   Had Plaintiff known the true facts with respect to the dangerous and serious
health and/or safety concerns of Dual-ended Combat Arms earplugs,
Plaintiff would not have used and/or relied on the Dual-ended Combat Arms
earplugs.

197.   Defendant's aforementioned conduct constitutes fraud and deceit and was
committed and/or perpetrated willfully, wantonly and/or purposefully on
Plaintiff.

198.   As a result of the foregoing acts and omissions, Plaintiff was caused to
suffer serious and dangerous side effects including, sensorineural hearing
loss and tinnitus, and has further suffered the injuries and damages as
alleged herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant and
requests compensatory damages, punitive damages, together with interest,
costs of suit, attorneys' fees, and such further relief as the Court deems
equitable and just.

## COUNT XI
## VIRGINIA'S CONSUMER PROTECTION ACT

199. Defendants' actions are fraudulent, deceptive and in clear violation of

Virginia's Consumer Protection Act, entitling Plaintiff to damages and relief

under Va. Code Ann. § 59.1-200 *et seq.*

200. The Defendants conduct was deliberate, willful, intentional, and motivated

by profit and is indicative of a complete indifference for the safety of

Plaintiff. Particularly:

    a.    They deceptively and unfairly permitted known defective ear plugs to be manufactured which in turn created unreasonable risk of injury to Plaintiff;

    b.    They deceptively and unfairly disregarded information it had available regarding defects in its Dual-ended Combat Arms earplugs;

    c.    They deceptively and unfairly altered Dual-ended Combat Arms earplugs during fitting as part of its alleged testing for the purpose of securing test results that would enable it to sell its defective Dual-ended Combat Arms earplugs;

    d.    They deceptively and unfairly completed the said testing as above to ensure that the test results would give the false impression that the Dual-ended Combat Arms earplugs met required noise attenuation parameters;

    e.    They had actual acknowledged that the Dual-ended Combat Arms earplugs and components did not comply with established guidelines and they deceptively and unfairly kept this information from the U.S. government and end users including Plaintiff;

    f.     They deceptively and unfairly failed to warn the user public of the defect for fear that this information would adversely affect the confidence of the consumer and thus result in a decrease of profits for the defendants;

    g.    They deceptively and unfairly failed to report the safety defect to the U.S. government, the consuming public and all potential users.

201.   Defendant's conduct was fraudulent, deceptive and unfair and motivated by profit and is indicative of a complete indifference for the safety of Plaintiff. The defendants have had knowledge of the defect and deceptively and unfairly concealed evidence because of the cost of rectifying the defect in order to protect their profits without regard to the safety of the consumer.

202.   Defendants were under a duty to disclose this information to the Plaintiff, as well as laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because Defendants made representations and partial disclosures concerning the nature and quality of their product which they had a duty to correct, because Defendants were in a superior position to know the true state of the facts about the dangerous and defective nature of its known risks to the Plaintiff.

203.   Plaintiff did not know, and could not learn, the material facts and important information Defendants omitted and suppressed. The facts and information fraudulently, deceptively and unfairly suppressed and concealed by Defendants is material, and of such a nature that it can be reasonably

presumed that the suppression and concealment of such facts were material facts which were misrepresented to Plaintiff.

204.   As a result of Defendant's fraudulent, deceptive and unfair omission of material facts, the U.S. government and end users including Plaintiff acted to their detriment in purchasing the Dual-ended Combat Arms earplugs, which they would not have purchased.

205.   As a result of Defendant's practices, Plaintiff has suffered actual damages in that he/she used the Dual-ended Combat Arms earplugs which are dangerous and defective that has caused and will continue to cause Plaintiff damages and increased risk of bodily injury and other damages.

206.   Plaintiff is a consumer within the meaning of the Act, who own, purchased and/or acquired Dual-ended Combat Arms earplugs.

207.   Defendants acted deceptively and unlawfully in the design, manufacture, supply, and/or sale of the Dual-ended Combat Arms earplugs.

208.   makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

209.   Va. Code Ann. § 59.1-204 creates a private right of action for individuals who are aggrieved by a violation of the VA Consumer Protection Act by another person.

210.    Va. Code Ann. § 59.1-204 provides that the prevailing party in litigation

brought under Virginia's Consumer Protection Act shall be entitled to

recover reasonable attorney's fees and court costs from the non-prevailing

party.

211.    Va. Code Ann. § 59.1-200 states that a person has violated the Virginia

Consumer Protection Act if he engages in deception, fraud, false pretense,

false promise, or misrepresentation in connection with a consumer

transaction.

212.    Defendants engaged in the above referenced fraudulent, deceptive and unfair

acts and omissions including causing to be designed, manufactured, supplied

and/or sold the Dual-ended Combat Arms earplugs in violation of 42 U.S.C.

§ 4901, et seq., that govern the testing and attendant labeling of hearing

protective devices like the Dual-ended Combat Arms earplugs, as well as: 40

C.F.R. § 211.206-1 and 40 C.F.R. § 211.204-4(e) of the EPA regulations in

exchange for payment, and in an effort to secure millions of dollars in sales,

which constitutes trade and commerce.

213.    The Plaintiff has agreed to pay the undersigned attorney reasonable

attorney's fees in bringing this action.

214.    Defendant's acts constitute fraudulent, deceptive, or unfair acts or practices

in violation of Virginia Consumer Protection Act.

215. Upon information and belief, Defendants continue to deceptively conceal and understate the existence of the Dual-ended Combat Arms earplugs; the safety risks associated with the Dual-ended Combat Arms earplugs; and the increased risk to the Plaintiff, and public associated with the Dual-ended Combat Arms earplugs.

216. As a result of Defendants' fraudulent, unfair and deceptive trade practices, Plaintiff suffered damages, which entitles him or her to relief.

217. Plaintiff is entitled to an award of three times the actual damages sustained, reasonable attorneys' fees and court costs pursuant to Va. Code Ann. § 59.1-204 if she prevails.

**WHEREFORE**, Plaintiff demands judgment against Defendants for relief as set forth in the Prayer for Relief below, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT XII
## GROSS NEGLIGENCE

218. The wrongs committed by Defendant were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law would allow the imposition of punitive damages which Plaintiff seeks, as set forth below.

219.   Such punitive damages are appropriate given Defendant's conduct, as

further alleged herein, which includes the failure to comply with applicable

guidelines and standards, including but not limited to ANSI, OSHA, EPA,

and MPID guidelines and standards, which recklessly caused substantial

injuries to Plaintiff (or, when viewed objectively from Defendant's

standpoint at the time of the conduct, involved an extreme degree of risk

considering the probability and magnitude of the potential harm to others),

of which Defendant was actually, subjectively aware of the risks involved,

but nevertheless proceeded with conscious indifference to the rights, safety,

or welfare of others, or included a material representation that was false,

with Defendant knowing that it was false or with reckless disregard as to its

truth and as a positive assertion, with the intent that the representation is

acted on by Plaintiff.

220.   Plaintiff relied on the representations and suffered injuries as a proximate

result of this reliance.

221.   Plaintiff seeks to assert claims for punitive damages in an amount within the

jurisdictional limits of the Court, as set forth below.

222.   Plaintiff also alleges that the acts and omissions of the Defendant, whether

taken singularly or in combination with others, constitute gross negligence

that proximately caused the injuries to Plaintiff. In that regard, Plaintiff

seeks punitive damages in amounts that would punish Defendant for its conduct, and which would deter other manufacturers from engaging in such misconduct in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## PUNITIVE DAMAGES

223.  Defendant has acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

    a.    By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs;

    b.    By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms earplugs;

    c.    By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

224. Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-ended Combat Arms earplugs caused his injuries. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms earplugs-induced injuries at an earlier time because, at the time of these injuries, the cause was unknown to Plaintiff.

225. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

226. Furthermore, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from

Plaintiff the risks associated with the defects in the Dual- ended Combat Arms earplugs.

227. As a result of Defendant's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that the Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

228. Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms earplugs, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms earplugs.

229. Additionally, pursuant to the Service members Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations applicable herein. See 50 U.S.C. § 3936

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray as follows:

i.  That process issue according to law;

ii.  That Defendant be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiff and against Defendant for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

iii.  Pain and suffering (past and future);

iv.  Wage loss (past and future);

v.  Loss of earnings and loss of earning capacity;

vi.  Medical expenses (past and future);

vii.  Loss of enjoyment of life (past and future);

viii.  Mental anguish and distress (past and future);

ix.  Disfigurement (past and future);

x.  Physical impairment (past and future);

xi.  Awarding Plaintiff their costs and expenses in this litigation, including, but not limited to, expert fees and reasonable attorneys' fees;

xii.  Punitive or exemplary damages in such amounts as may be proven at trial; and

xiii.  Awarding Plaintiff such other and further relief as may be just and proper.

Dated: May 14, 2019.

Respectfully submitted,

*/s/ Catherine S. Hulme*
**ATTORNEY FOR PLAINTIFF**
Catherine S. Hulme, CO Bar No. 46720
The Law Office of Sam Cannon
3534 John F. Kennedy Parkway, Suite B
Fort Collins, CO 80525
P: 970-471-7170 / F: 970-360-2684
E: kate@cannonlaw.com